## Keystone Gas Company v. Allen et al.

(Decided February 12, 1929.)

GEORGE B. MARTIN and J. C. HOPKINS for appellant.

C. B. WHEELER and J. W. CAUDILL for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

On August 5, 1914, Apperson Hays and wife executed an oil and gas lease covering a tract of 148 acres of land owned by him, in the usual form. One of the provisions of the lease was that the lessee should commence operations and complete one well on the land within six months, or thereafter pay as rent to the lessor 10 cents an acre yearly, to be paid quarterly in advance until such well was completed. After a well was put in and gas was marketed from it, the lessee was to pay the sum of $200 a year for each well, payable quarterly in advance, while the sale of gas continued. The lease by regular assignment passed to the Keystone Gas Company. No well was put down in six months, but the rent at 10 cents an acre was regularly paid. On August 5, 1920, Hays and wife notified the company in writing as follows:

> "The land is now owned by the following named parties in amounts of acreage set opposite their respective names: Garrett Hays, Langley, Floyd Co., Ky., 50 acres, more or less. Ballard Dudley, Langley, Floyd Co., Ky., 34 acres, more or less. Felix Kirby, Langley, Floyd Co., Ky., 12 acres, more or less. Marion Wicker, Langley, Floyd Co., Ky., Lina Wicker (wife of Marion Wicker), Langley, Floyd Co., Ky., 12 acres, more or less, Laura A. Allen (wife

of John Allen), Langley, Floyd Co., 32 acres, more or less. Total—140 acres, more or less.

"Please make payment of quarterly rentals due today and future rentals as they become due, in the manner provided in the above named lease, proportioned among the above named parties according to the acreage held by each, and oblige."

A well was brought in on July 21, 1921, on the land of one of the children, and another was brought in on the land of another on March 4, 1922. Mrs. Laura Allen, who was one of the daughters of Apperson Hays and to whom two shares of the land had been conveyed, as she had bought out another sister, brought this suit on January 23, 1923, asking a cancellation of the lease and all proper relief on the ground that no well had been put down on her property, although she had notified the company to do so and had refused to receive any part of the rents. The issues were made up, and, the case being submitted, judgment was entered in her favor canceling the lease as to her land. The gas company appeals.

In the recent case of McIntire, Adm'r, v. Bond (Ky.) 13 S. W. (2d) ——, decided February 1, 1929, the court had under consideration the rights of the parties in a case like this, where the owner makes an oil and gas lease and afterwards divides the land between his children. In that case it was held, in substance, that the royalty from the gas lease is rent for the land; that the lease, having been made before the deeds to the heirs, was not affected by these deeds; that the heirs simply took the rent which belonged to their father; and that this must be divided between them. On the facts, so far as they are presented here, that rule should be applied in this case. The lease is an entirety. Under it the rent to be paid is paid for the use of all the land covered by the lease. The deeds which Apperson Hays executed are not in the record. The court is uncertain from the record whether the land was divided equally between the children or whether some got more than others by paying for it, and does not now determine how the royalty should be divided. Until a well was put down, the amount due each was properly determined by the acreage, as this had been directed and was acquiesced in by the parties. None of the children may demand that a well be put down on his land. The obligations of the lessee as to putting down wells is in no wise affected by any transaction had

between Apperson Hays and his children. The lessee can only be required to do now what Apperson Hays might have required him to do. The children who take from him simply stand in his shoes.

On the return of the case to the circuit court, the plaintiff should make the other owners of the land defendants to the action, and the court will then determine how much is due the plaintiff from the royalty on the land and will make such further orders as may be necessary to do justice between the parties. The plaintiff is entitled to interest on the amount due her from the time it was payable, unless it was tendered to her and refused.

Defendant's exceptions to the testimony of Mrs. Allen as to the contents of a letter she wrote to the defendants should have been sustained. There was no proof that the letter was lost. No notice to defendant to produce it had been given. There was no proof that the letter was mailed properly stamped and addressed. 1 Greenleaf on Evidence, secs. 88, 116; 2 Wharton on Evidence, sec. 1323.

Judgment reversed, and cause remanded for further proceedings consistent herewith.