**TERTELING BROTHERS, Incorporated,**
**Appellant,**

v.

**C. R. BENNETT, Appellee.**

Court of Appeals of Kentucky.

Feb. 24, 1956.

---

Woodward, Bartlett & Catinna, Hartford, for appellant.

Otto C. Martin, Hartford, for appellee.

MOREMEN, Judge.

Appellant, Terteling Brothers Incorporated, is the owner in fee simple of the surface and of an undivided one-half interest in oil, gas and other minerals lying under the surface of a tract of land situate in Ohio County. Appellee, C. R. Bennett, is the owner of the remaining undivided one-half interest in the oil, gas and minerals under the same land.

Appellant, under KRS 389.020 (once, § 490 of the Civil Code of Practice) by petition to the circuit court sought a judgment ordering sale of the undivided interest in the oil, gas and minerals and a division of the proceeds of the sale by the joint owners. A demurrer was sustained to the petition, appellant declined to plead further, and judgment was entered dismissing the petition.

The question presented on this appeal is whether the owner of the surface and one-half undivided interest in the minerals is entitled, under the statute, to a sale of all the minerals under the tract and a division between the joint owners of those minerals.

Since this question has caused considerable difficulty in cases that have appeared before this court, a short sketch of the historical rights granted by the courts in similar situations must be given.

We are told that, under the early common law of England, only co-parceners were accorded the right to partition their land, perhaps because in those times feudal military rights were paramount and the law was not concerned so much with the individual rights of property owners as it was with the ultimate sovereign title to all land. Being holders under the military system, co-parceners were given this right of severance because each parcel of ground carried with it the duty to render military service. By the statutes of 31 and 32, Henry VIII (1539–40), however, the remedy was extended to joint tenants, tenants in common of estates of inheritance, of freehold, and for years. See 12 A.L.R. 644;

American Law of Property, 6.21; 40 Am. Jur., Partition, § 106.

In this country the extended rights seem to have been also largely the result of statutory enactment, as witness KRS 389.020, under which it has been repeatedly held that in order to confer jurisdiction on a court to partition or to order a sale and division of the proceeds because of indivisibility, all that needs to be shown is a vested possessory estate in land which is jointly held in any manner.

The recent attitude of the courts is defined in Shelby v. Shelby, 192 Ky. 304, 233 S.W. 726, 729, where it is said:

> "So strongly has the right of one joint owner to a partition of the jointly owned property become entrenched in the law that the right has become a favored one with the courts, and they are reluctant to deny it, and will not do so, unless there is some impelling necessity therefor."

The application of the above rule is very simple in the ordinary case where the character of the estate held is readily ascertainable, but, in cases such as we have here, complications arise as the result of the almost fictional quality of the estates conveyed. At an early date (1887) in Kincaid v. McGowan, 88 Ky. 91, 4 S.W. 802, 804, 13 L.R.A. 289, it was held:

> "An estate in fee in land carries with it all metals and minerals thereunder, unless the metals and minerals are excepted in the conveyance, or 'have before been severed in ownership, and the right thereto vested in some other person.' The surface and the metals and minerals may be a distinct property from each other by separate conveyances from individuals. See Bing.Real Prop. 288.

> "Minerals in place are land. They are subject to conveyance. The surface right may be in one man, and the mineral right in another. Both, in such a case, are land-owners; they

own separate and distinct corporeal hereditaments. See Caldwell v. Fulton, 31 Pa. 475. The owner of land may convey a surface estate in fee in it, and reserve to himself an estate in fee in the minerals, or any particular species of them; in which case the vendee holds a distinct and separate estate in the surface or soil, and the vendor holds a distinct and separate estate in the minerals. By this severance each estate is subject to the laws of descent, of devise, or conveyance."

Obviously, the surface and the minerals are not distinct physical properties so long as they remain fused, but the pressure of commercial expediency has forced the invention of this device which in turn has given rise to many problems. Hard physical realities are difficult to dissect even with the sharp scalpel of abstract logic. Particularly is this true in connection with real estate law under a system of jurisprudence where traditionally the landowner—and this means the surface owner who also owns above and below—received a special protection of the law.

This concern for the surface landowner over the possessors of other kinds of property, appears in the leading case of Ball v. Clark, 150 Ky. 383, 150 S.W. 359, 361, relied upon by appellee. In that case, Ball and his children owned jointly a 100 acre tract of land. Ball conveyed to Clark his undivided one-half interest in the minerals underlying the surface. He also conveyed certain surface rights because the conveyance anticipated a mining operation, and Clark was granted the right to build roads, to store and handle all minerals produced, and build certain buildings; included was the right to remove timber which was under 12 inches in diameter. The trial court granted the partition sought by Clark but, on appeal, this court held the judgment to be improper and although the opinion recognized the rule that after minerals are severed they become a separate estate and may be the subject of partition or, in the case of indivisibility, of sale under the statute, still it would not permit an act which

would imperil the surface owner's interest in the property, saying:

> "It will be noted at once that under this sale not only would the rights of these infant co-tenants in the minerals themselves be disposed of, but their surface rights would be seriously interfered with; for they would be forced nolens volens to part with their ownership of the timber under 12 inches in diameter, a property which they might be wholly unwilling to sell in their moiety of the entire property."

In the main discussion of the opinion, however, the court approved the early rule that one co-tenant cannot, by conveying an interest in minerals to a stranger, create a new tenancy in common between his co-owners and the stranger to whom the minerals were conveyed, and reliance was had on § 198 of Freeman on Co-Tenants. It was the affirmation of this rule, rather than the actual decision on the facts presented, which has caused trouble. About a year later, under authority of the Ball case, in Scott v. Pond Creek Coal Company, 152 Ky. 67, 153 S.W. 23, 24, the court propounded and answered this question:

> "The question presented is: May the owner of an undivided $13/18$ interest in and to the minerals, gases, etc., underlying a certain tract of land, in an action against infants who own the remaining $5/18$ interest in said minerals, gases, etc., as well as a like interest in the entire fee, have all the minerals, gases, etc., sold on the ground of their indivisibility? This precise question was before the court in the case of Ball et al. v. Clark, Trustee, et al., 150 Ky. 383, 150 S.W. 359. Upon careful consideration it was held that such a sale could not be made."

Thereafter, the Ball case has been cited in at least twelve of our opinions and many times by courts of other states, in most instances to support the proposition that there may be two estates in land—mineral estate and surface estate.

In several opinions we have undertaken to explain the decision in and the meaning of the Ball case. In Union Gas & Oil Co. v. Wiedemann Oil Co., 211 Ky. 361, 277 S.W. 323, 332, it was stated: "This holding was based on the proposition that all of the minerals in the land had not been severed from the surface ownership"; and in Harkins v. Hatfield, 221 Ky. 91, 297 S.W. 1109, 1111, the court contented itself by saying: "However, partition is not permitted as between joint owners of minerals where the surface is all owned by one of them. Ball v. Clark, 150 Ky. 383, 150 S.W. 359." In Laws v. Sturgill, 287 Ky. 37, 151 S.W.2d 423, where the owners of an undivided $5/6$ interest in land transferred their mineral rights, it was held, under the authority of the Ball case, that such action did not affect adversely the owner of the remaining $1/6$ interest because he could not be required to sever his mineral estate from the surface against his will.

Thus, whatever was the court's intention as to the extent of the holding in the Ball case, it has, by subsequent interpretation, been accepted to support the general proposition that partition cannot be had by the joint owners of the mineral estate where the surface is owned by one of them.

A full acceptance of this proposition, however, ignores the fact that in most of the cases, particularly in the Ball case, the Harkins case and the Pond Creek case, the suit for partition, or sale and division of proceeds, *was at the instance of the person whose interest was confined solely to the mineral tract,* whereas the co-owner against whom partition was sought owned the surface. The traditional solicitude of the courts concerning the rights of the surface owners might well have accounted for the results in these opinions, but does not account for the bald statements often employed.

With the admonition in mind that the right of one joint owner to a partition is "a favored one with the courts," we will again examine KRS 389.020 in light of the above discussion. Under this statute, all

that needs to be shown is that the property sought to be sold is jointly held and that the joint owners have vested possessory estates. Both of those elements are satisfied by the facts in the instant case.

The only restriction on sale in the instant case is supplied by the recognition in the Ball case of the old common law rule which prohibited one co-tenant from impairing the other's interest by a fractional conveyance of an interest in minerals, and the subsequent acceptance of that rule in later cases. We think that, although the Ball opinion recognized it, it did not necessarily apply it. The emphasis, as we have said, was on the sanctity of the rights of the owner of the surface and the protection of the enjoyment of those rights from violation by the owner of an undivided interest in the minerals lying under the surface.

In the case at bar, appellant is the owner of the entire surface rights. The need for protection, as a surface owner, vanished when appellant itself sought partition by sale. The minerals sought to be sold are, in fact, the only property jointly held although there has never been a complete severance of all of the minerals from the surface.

We are supported in our reasoning by Warfield Natural Gas Company v. Cassady, 266 Ky. 217, 98 S.W.2d 495. In that case we reversed a judgment granting partition of a tract of land at the instance of the owners of an undivided interest in both the surface and the minerals against parties who owned only an undivided portion of the minerals, and ordered that, due to the peculiar characteristic of the property, it be sold rather than partitioned. See Tuggle v. Davis, 292 Ky. 27, 165 S.W.2d 844, 143 A.L.R. 1087, wherein the rule in the Warfield case is discussed. Thus, in the Warfield case, the parties who, under the Ball case and the Pond Creek case, had a right to resist partition—the surface owners—in fact sought a partition. We ordered a sale and thus tacitly overruled the proposition that partition cannot be had between joint owners of a mineral estate where the surface is owned by one of them—when the party seeking partition owns the surface.

Judgment reversed for proceedings consistent with this opinion.